**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROSA JONES, ADMINISTRATIX of      )
the ESTATE of MARC JONES,      )
DECEASED,      )
     )
         Plaintiff,      )     2:19-cv-00050
     )
         v.      )
     )
SWEPI L.P. et al.,      )
     )
         Defendants.      )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Pending before the Court is Defendant Consolidated Rig Works, L.P.'s ("Consolidated Rig") Motion for a Protective Order seeking to prevent discovery of multiple email threads, field service reports, and an internal memorandum. (ECF No. 95.) Plaintiff Rosa Jones asserts that Consolidated Rig's "blanket assertions" that the disputed documents are work product falls well short of meeting the invoking-party's burden. (ECF No. 96.) And even if blanket assertions were enough, Ms. Jones argues that the documents at issue were not created primarily for the purpose of litigation, thus placing the documents outside the work product doctrine's protection. For the reasons that follow, except for the December 12, 2018, emails identified in paragraph thirty-six (36) of its Motion, Consolidated Rig's Motion is **DENIED**. Because Ms. Jones withdrew her request for the December 12, 2018 emails (ECF No. 96, at ¶ 36), Consolidated Rig's Motion as to those emails is **DENIED AS MOOT**.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(3) governs work product protection for documents. The Rule provides: "Ordinarily, a party may not discover documents and tangible things that are

prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). But the Rule allows for disclosure of otherwise protected work product if the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

To determine whether the work product doctrine protects a document, the Court conducts a two-part inquiry: First, the Court asks whether litigation could reasonably have been anticipated when the document was created. Second, the Court asks whether the document was prepared primarily for the purpose of litigation. *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265–66 (3d Cir. 1990). "Documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product." *In re Gabapentin Pat. Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003). The party invoking work product protection bears the burden of establishing both parts of the Court's inquiry. *See Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 246 (W.D. Pa. 2007). "Blanket assertions are not enough to shift the burden to the party seeking discovery." *Id.* (citing *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002)).

## II.    DISCUSSION

Consolidated Rig moved for a protective order preventing the discovery of multiple emails, field service reports, and an internal memorandum. (ECF No. 95.) For some of these documents, Consolidated Rig attached redacted versions as an exhibit to its Motion. For others, Consolidated Rig withheld the document altogether. Jones filed a Response in opposition, arguing that Consolidated Rig's assertion of work product was too generalized; the requested documents were not work product; and even if the documents were work product, Jones has a substantial need for their production. (ECF Nos. 96 and 97.) The Court reviewed Consolidated Rig's exhibits (ECF

Nos. 95-1 and 95-2) and reviewed the withheld or redacted documents *in camera*. (ECF Nos. 104 and 106.)

For simplicity, the Court's discussion will group the contested documents into four (4) categories. First, the Court will discuss the withheld field service reports.[1] Second, the redacted emails.[2] (ECF Nos. 95-1 and 95-2.) Third, the withheld emails.[3] And fourth, the withheld internal memorandum.[4] Based on its review, the Court concludes that none of the withheld documents are protected by the work product doctrine.

### A.  The Withheld Field Service Reports

Consolidated Rig provided the Court with eight (8) field service reports it withheld on work product grounds. The Court then conducted an *in camera* review of these contested documents and concludes that they are not work product.

All of the withheld field service reports were created between November 7 and November 14, 2018—shortly after Mr. Jones's death. In them, a Consolidated Rig technician, Donald Taylor, documents maintenance performed on the snubbing rig involved in Mr. Jones's tragic accident ("snubbing rig # 10"). (ECF No. 95, at 19–25.) In its Motion, Consolidated Rig states that because Mr. Taylor created the reports after the accident, Consolidated Rig "reasonably anticipated the prospect of litigation resulting from the accident." (*Id.*) Consolidated Rig further asserts that the reports "contain mental impressions and opinions from Consolidated Rig personnel concerning areas of the snubbing rig where Mr. Taylor's focus should be concentrated." (*Id.*) Thus, Consolidated Rig argues, disclosure of the field service reports "could reveal Consolidated Rig

---

[1] The withheld field service reports are identified in paragraphs 38, 39, 40, 41, 42, 43, 44, 45.

[2] The redacted emails are identified in paragraphs 27, 28, 29, 32, 33, 34, 35, 36.

[3] The withheld emails are identified in paragraphs 24, 25, 26, 30, 31.

[4] The withheld internal memo is listed in paragraph 37.

personnel's thought processes, opinions and conclusions concerning possible contributing factors to the plaintiff's accident, whether Consolidated Rig would have potential liability based upon those contributing factors, and strategy respecting Consolidated Rig's defenses to anticipated litigation." (*Id.*)

Consolidated Rig does not offer any more substantive justification for why these particular withheld field service reports are work product, other than what the Court quoted above. Based on the Court's *in camera* review, the field service reports are not work product. In them, Mr. Taylor simply details maintenance he performed on the snubbing rig involved in the accident that killed Mr. Jones. Nothing about the reports facially suggests that they were created for the primary purpose of litigation. *Rockwell Int'l*, 897 F.2d at 1265–66. Instead, they facially appear to document the work Mr. Taylor performed on the snubbing rig in the weeks following the accident. What's more, Consolidated Rig has offered up no extrinsic evidence—for example, affidavits from its general counsel or outside counsel—to suggest it sent Mr. Taylor to the accident site for some litigation-centric purpose. Because work product protection only extends to documents that are created primarily for litigation, not just any document that is later useful for litigation, the field service reports fall outside Rule 26(b)(3)'s protection. *In re Gabapentin Pat. Litig.*, 214 F.R.D. at 184.

**B.  The Redacted Emails**

Consolidated Rigs next supplied to the Court, for *in camera* review, the redacted emails identified in paragraphs twenty-seven (27), twenty-eight (28), twenty-nine (29), thirty-two (32), thirty-three (33), thirty-four (34), thirty-five (35), and thirty-six (36) of its Motion. (ECF No. 95.) Following its review, the Court concludes that the contested redactions do not constitute work product.

The redacted emails that Consolidated Rig seeks to protect are part of an email chain that is partially an internal Consolidated Rig conversation and partly correspondence with a representative of Shell. The email chain's subject line reads: "Re: Issuance of Industry Learning from Incident." (ECF No. 95-1, at 36.) And the conversation was in regard to Shell, the company that operated the rig site where Mr. Jones died, drafting a sort of accident report to share broadly within the industry. (*Id.*)

The first email in the thread is from Shayne Dustin, using a Shell email address, to Caleb Fulks, using a Consolidated Rig email address. (*Id.*) In that initial email, which is left completely unredacted, Mr. Dustin thanks Mr. Fulks for his "time and support in sharing a broad industry learning." (*Id.*) Mr. Dustin goes on to offer a template report for Mr. Fulks to use and suggests a simple way of phrasing the description of the accident in the report. (*Id.*) Mr. Dustin also tells Mr. Fulks that he wants to have the industry learning report done in time to share with executives at Shell in the upcoming weeks. (*Id.*) And Mr. Dustin says: "we want to share the learnings broadly to ensure that learning from this incident helps our entire industry." (*Id.* at 37.) Finally, Mr. Dustin attached a copy of the draft industry learning report, which is addressed to "Service Sector of the Oilfield Industry." (*Id.* at 41.) The draft report, left completely unredacted, suggests a possible cause of the accident that killed Mr. Jones as well as a fix for the piece of equipment involved. (*Id.*)

Looking closely to the email chain's redacted portions, Consolidated Rig seeks to protect a few sentences exchanged between Mr. Rick Coon and Mr. Caleb Fulks relating to the industry learning report described above. (Ex. 95-2, at 12–13.) The emails in question were sent on December 7, 2018; December 9, 2018; and December 11, 2018. (*Id.*) Other Consolidated Rig personnel who were included on the email chain but were not active participants included: Jeremy

Lawrence (Service Manager), Wayne Chance (Manager), and Kenneth "Kenny" Butler (Chairman of the Board and Technical Sales). (*Id.*) The redacted portions include both parts of Mr. Fulks's email and parts of Mr. Coon's response to Mr. Fulks regarding the industry learning report. (*Id.*) In the redacted portions, Mr. Fulks indicates that the Shell template did not "add anything in the way of legal protection" and further states that the template should be reviewed by Consolidated Rig's outside counsel, John Salterelli, before releasing to Shell for broader sharing. In response, Mr. Coon stated that he forwarded said report to Mr. Salterelli. In another redacted portion of his reply, Mr. Coon made a statement suggesting that additional safety warnings on valves' hosing may be needed, but Mr. Coon also asserted that his comment was not directed at the snubbing rig accident at issue here.

Specifically, Consolidated Rig argues that Mr. Coon's December 7, 2018 reply falls within the scope of the work product protection because the email "was sent well after Consolidated Rig reasonably anticipated the prospect of litigation resulting from the accident" and discusses contributing factors to the plaintiff's accident which would demonstrate liability on the part of Consolidated Rig. (ECF No. 95, at 12, 15.) The December 9, 2018 and December 11, 2018 emails are redacted on the same grounds. (*Id.* at 12, 13, 15, 16, 17.) Further, regarding the December 11, 2018 email, Consolidated Rig argues that because Mr. Coon's reply had been sent after the complaint in this action was filed, the timing evidences "that litigation had already been reasonably anticipated immediately following notification of this accident"; and that Mr. Coon "was confirming the request to send the documents for legal review." (*Id.* at 17.) In sum, Consolidated Rig argues that based on its descriptions of the emails and justifications for redactions summarized above, each redaction contains "mental impressions of Consolidated Rig personnel concerning the

accident"; "strategy respecting and concerning potential defenses to the accident"; and "opinions and strategy . . . prepared in anticipation of litigation." (*Id*., at 15, 16, 17.)

Consolidated Rig bears the burden of establishing that the content behind the redacted portions of these emails was made *both* in reasonable anticipation of litigation and with the primary purpose of preparing for litigation. *See Highland Tank*, 246 F.R.D. at 246. In light of its *in camera* review, the Court concludes that Consolidated Rig has not met its burden. The Court addresses each of Consolidated Rig's arguments pertaining to the email redactions in chronological order.

First, Consolidated Rig's argument that the December 7, 2018 redaction is entitled to protection because the content of the email contains internal discussions about the plaintiff's accident and whether Consolidated Rig would have potential liability (ECF No. 95, at 15) does not satisfy Consolidated Rig's burden on such a motion because these arguments are merely blanket assertions. *See Highland Tank*, 246 F.R.D. at 246. Further, while Mr. Coon's comment in the email about a safety warning may, if liberally interpreted, suggest that Mr. Coon's email was sent in anticipation of litigation, the email's content does not persuade the Court that the email was created for the primary purpose of preparing for litigation, and both components are required to trigger work product protection. *Rockwell Int'l*, 897 F.2d at 1265–66. Notably, Mr. Coon's email reply makes clear at the outset that his statement pertaining to the potential need for safety warnings bore no relation to Mr. Jones's accident or the industry learning report being discussed. Accordingly, the wording of Mr. Coon's reply facially demonstrates that his email response was not sent with an eye on potential litigation following Mr. Jones's death, and thus, it does not fall in the scope of work product protection. *Id*.

Second, Consolidated Rig's arguments that Mr. Fulks's statements in the December 9, 2018 email thread fall within the work product protection are also advanced by its making blanket

assertions, which is "not enough to shift the burden to the party seeking discovery." *See Highland Tank & Mfg. Co.*, 246 F.R.D. at 246. Taking a closer look at the email's content, Mr. Fulks's suggestion that Consolidated Rig share the report with "DWS and shell for general approval" and his second suggestion to Mr. Coon that the company "run [the industry learning report] by Salterelli prior to officially releasing it to Shell for their use" does not indicate that the email was sent in anticipation of or in preparation for litigation regarding the October 27, 2018 accident. First, correspondence surrounding a broad industry learning report does not facially support a conclusion that the emails were litigation specific. Second, Mr. Fulks's statement: "prior to officially releasing it to Shell for their use" indicates that the correspondence was for a purpose other than preparing Consolidated Rig for litigation in the instant matter. Rather, this statement demonstrates that the purpose behind the email was to ensure the creation of an accurate and thoroughly reviewed industry learning report prior to releasing to Shell for broader dissemination. Thus, these redactions were not in anticipation of litigation surrounding Mr. Jones's accident on snubbing rig # 10 nor were they sent in preparation for litigation stemming from the accident. When a document is prepared for another purpose other than litigation as the motivating force, the document is not afforded the work product protection. *See In re B & C Seafood LLC*, 431 F. Supp. 3d 533, 536 (D.N.J. 2019) (Documents "created for another purpose are not protected").

Third and finally, Consolidated Rig contends that the December 11, 2018 email should be protected because it would otherwise reveal Mr. Coon's confirmation that the industry learning report (which the Court notes was left entirely unredacted) should be sent to legal counsel for review. (ECF No. 95, at 17–18.) In the Court's assessment, the redaction is not work product, and further, Consolidated Rig's reasoning does not support a finding of work product protection. Mr. Coon's confirmation that he sent along the industry learning report to outside counsel suggests

nothing more than what was already described above; it does not suggest that his confirmation email was sent in anticipation of or in preparation for the litigation arising from Mr. Jones's accident. Again, it strikes the Court that sending a document to counsel for review prior to an industry-wide dissemination would be for a purpose reflecting ordinary or common practice because Consolidated Rig would want to ensure that a report intended to be broadly shared was thoroughly reviewed prior to releasing to Shell or another like-company for official use. That communication does not evince a litigation-detected purpose. *See In re B & C Seafood LLC*, 431 F. Supp. 3d at 536 (holding that documents "prepared in the ordinary course of business or created for another purpose are not protected").

Next, while Consolidated Rig's argument regarding the timing of Mr. Coon's December 11, 2018 email could lead to an inference that Mr. Coon's reply was made in anticipation of litigation, such an inference is not a benefit to which Consolidated Rig is entitled on a motion for protective order.[5] *Id.* In sum, the Court concludes that Consolidated Rig has not met its burden, and the redacted portions of email chains dated December 7, 2018; December 9, 2018; and December 11, 2018 do not fall within the scope of work product protection.

---

[5] Ms. Jones's Complaint was filed on December 10, 2018 (ECF No. 1-2). At 7:29 AM the very next day, Mr. Coon sent the reply to Mr. Fulks's email chain. (ECF No. 1-1.) Meanwhile, process was not served on Defendant Shell Energy Service Company until December 17, 2018 and was not served on Defendant Swepi L.P. until December 26, 2018. (ECF No. 1-3.) Finally, Consolidated Rig was not added as a Defendant until June 9, 2019. (ECF Nos. 36 and 38.) Consolidated Rig wants the Court to infer from these dates that Mr. Coon's reply to Mr. Fulks on December 11, 2018, sent just twenty-four (24) hours or less after Ms. Jones filed her first complaint against a defendant *other than* Consolidated Rig, in addition to the earlier-in-time email redactions on December 7 and 9, were in anticipation of litigation arising out of the accident. Logically speaking, however, these dates do not support such an inference. First, Consolidated Rig was not yet a named party in the action at the time Mr. Coon sent the email, and because the email does not facially support a claim that the email was sent in anticipation of litigation, it would not fall within the work product protection's scope. Mr. Coon's reply was instead a confirmation that he forwarded the broad industry learning report to Mr. Salterelli for review with the intent that Mr. Salterelli review the report before Consolidated Rig sent off to Shell for use and sharing. Consolidated Rig's burden on a motion for protective order is not satisfied by unsupported inferences like the one Consolidated Rig asks the Court to make here, *i.e.*, that the email was sent in anticipation of litigation. *Highland Tank*, 246 F.R.D. at 246 (explaining that the party invoking work product protection bears the burden of establishing both that the document was made in anticipation of and in preparation for litigation).

C. **The Withheld Emails**

Next, Consolidated Rig submitted to the Court a series of five (5) emails or email threads for an *in camera* review, and the Court concludes that none are not entitled to the work product protection. The withheld emails were sent a few days after the October 27, 2018 accident, and the Court will first review the contents of the emails prior to discussing its rulings.

On October 31, 2018, correspondence took place between Mr. Fulks and Jeremy Lawrence, Consolidated Rig's Service Manager, in which Mr. Lawrence appears to be explaining to Mr. Fulks some mechanics of the snubbing rig system and how a malfunction could have occurred. In another email chain dated October 31, 2018, Mr. Fulks forwarded Mr. Lawrence an older email thread, which predates the accident that killed Mr. Jones by a few months. In the earlier-in-time email chain that Mr. Fulks forwarded, Chris Griffin, Consolidated Rig's Sales Manager, sent a message to a group of Consolidated Rig executives (including Mr. Fulks) and an unidentified Hotmail email address. The subject line of the email chain was: "DWS snub 10 (9) follow up Q&A update #3." In it, Mr. Griffin requested that the Consolidated Rig executives review the Q&A update regarding snubbing rig # 10, the snubbing rig where Mr. Jones's accident later occurred, prior to sending out to customers or including in training materials.

In another withheld email thread dated October 31, 2018, and with the subject line, "Snub 10 Videos," Melissa Ortiz, Consolidated Rig's Technical Publications and Document Control Manager, sent Mr. Fulks and Mr. Lawrence a dropbox link (that is no longer active to the Court's knowledge). Finally, on October 31, 2018, Mr. Griffin forwarded to Mr. Coon and Mr. Fulks an older email chain that dates back to July 2016. The July 2016 email chain was entitled "#9 Investigation and Repair Items" and originated with Jay Lyons, a Deep Well Services (DWS)

10

Superintendent, in which Mr. Lyons provided to Consolidated Rig executives and a few other DWS employees a list of needed repairs on snubbing rig number nine (9).

Consolidated Rig argues that the emails described above should be withheld in their entirety because "the communication[s were] sent several days following the plaintiff's accident and after Consolidated Rig reasonably anticipated the prospect of litigation resulting from the accident." In addition, because the emails contain "discussions concerning possible contributing factors to the plaintiff's accident," Consolidated Rig argues that the emails contain "mental impressions of Consolidated Rig personnel concerning the accident, and contains strategy respecting and concerning potential defenses to the accident" and should be withheld on those grounds. (ECF No. 95, at 10, 11, 14.)

In the Court's view, the email chains that Consolidated Rig seeks to protect either discuss generally the snubbing rig where Mr. Jones was killed or include forwarded content that predates the October 27, 2018 accident (some by months and one email chain by two years). The content of the emails does not facially suggest that they were created in accordance with the work product doctrine's second required prong: with the primary purpose of preparing for litigation in the instant case. *Rockwell Int'l*, 897 F.2d at 1265–66. Rather, the email chains reflect what the Court concludes to be emails sent in the regular course of business, which includes corresponding about and investigating a recent accident as well as routine compilations of investigation reports detailing necessary repairs on snubbing rigs. *See In re B & C Seafood LLC*, 431 F. Supp. 3d at 536 ("Documents prepared in the ordinary course of business or created for another purpose are not protected, regardless of their utility in subsequent litigation."). Again, the fact that a few days after Mr. Jones's death, Mr. Griffin, Mr. Lawrence, or Mr. Fulks corresponded regarding the event; requested videos of snubbing rig # 10; or forwarded along email chains dated well before the

11

accident does not now bring these documents or their contents under the protection of Rule 26(b)(3) because documents "prepared for other purposes that prove useful in subsequent litigation are not attorney work-product." *In re Gabapentin Pat. Litig.*, 214 F.R.D. at 184. Notably, one of the email chains that Consolidated Rig now seeks to withhold as work product includes information about a snubbing rig other than the one involved in the present accident, which does not support a finding that the emails were sent in anticipation of or preparation for litigation. Another withheld email purports to be for sales or customer relations purposes as Mr. Griffin stated in his email that an investigation report circulated for review by Consolidated Rig personnel was "to show our customer base that we are learning and getting better with every step," and not for the primary purpose of litigation in the present matter. Finally, Consolidated Rig has offered no extrinsic evidence, such as affidavits from its general counsel or outside counsel, to suggest that the withheld emails, or the dropbox link included in one of the withheld emails, were conceived with litigation as the primary motivation. *See In re B & C Seafood LLC*, 431 F. Supp. 3d at 536 (explaining that to meet its burden, the party moving for work product protection must "demonstrate the precise manner in which a document is protected"). Again, because work product protection extends only to documents that are created primarily for litigation, not just any document that is later useful for litigation, the withheld emails are not entitled to Rule 26(b)(3)'s protection. *In re Gabapentin Pat. Litig.*, 214 F.R.D. at 184; *see In re B & C Seafood LLC*, 431 F. Supp. 3d at 536.

## D. <u>The Withheld Internal Memorandum</u>

Finally, Consolidated Rig submitted an internal memorandum (the "memo") to the Court for *in camera* review. The memo is dated November 18, 2018, which is a little over two (2) weeks

after the accident that killed Mr. Jones. The Court concludes that the internal memo does not constitute work product and should not be withheld.

Consolidated Rig argues that because this memo was prepared "well over two [2] weeks following the plaintiff's accident," it was prepared while Consolidated Rig "reasonably anticipated the prospect of litigation resulting from the accident." (ECF No. 95, at 19.) And thus, Consolidated Rig argues that the "contents of the memo and its attachments contain mental impressions . . . concerning the accident." (*Id.*) Consolidated Rig additionally notes that "two (2) photographs attached to this memo were taken during assembly of the snubbing rig in 2016 and those photographs have already been produced to the plaintiff." (*Id.*) Consolidated Rig's concern, however, is that the photographs' "inclusion with this memo, coupled with the attachments and schematic diagrams, tend to show Consolidated Rig personnel's mental impressions, opinions and strategy respecting defense to anticipated litigation." (*Id.*)

The Court finds that the timing of the memo and its contents demonstrate that litigation was reasonably anticipated when the memo was prepared. However, reasonably anticipating litigation is not all that must be shown to afford a document work product protection. The Court concludes that it cannot be fairly said that the primary or motivating purpose of the memo was to prepare for litigation surrounding the October 2018 accident. *See In re B & C Seafood LLC*, 431 F. Supp. 3d at 537–38 (holding that a report prepared "to serve the purpose of future risk mitigation, not litigation" does not receive work product protection); *In re Martin Marietta Materials, Inc.*, No. 10-0036, 2011 WL 1321546, at *3 (E.D. La. Apr. 15, 2011) (finding that a "Root Cause Analysis" Report was not work product because it was prepared to evaluate and advance work place safety, not for the primary purpose of litigation). Based on its *in camera* review, the Court is not persuaded by Consolidated Rig's blanket assertions that the document, or

any accumulation of the document with other evidence, contains mental impressions of Consolidated Rig's employees regarding the incident and potential defenses. These assertions are not enough to shield the memo from discovery, especially when the memo contains attachments of repair and investigation reports predating Mr. Jones's accident by two years. *See In re B & C Seafood LLC*, 431 F. Supp. 3d at 536; *Highland Tank*, 246 F.R.D. at 246. In the Court's view, the internal memo instead appears to be a report prepared with the primary purpose of identifying what caused Mr. Jones's accident by compiling past "Q&A" updates, which appear to the Court to reflect matters in the ordinary course of Consolidated Rig's business. *In re B & C Seafood LLC*, 431 F. Supp. 3d at 536 ("Documents prepared in the ordinary course of business or created for another purpose are not protected, regardless of their utility in subsequent litigation."). Further, in the memo, there is no legal advice or analysis; rather, the memo contains a compilation of "critical issues" and "mistakes" that may have given rise to the accident and that should be part of a "corrective and preventative action report." These notations appear to be a mitigative response to the accident, rather than a report compiled with litigation as the primary motivator. Finally, Consolidated Rig's argument that the memo includes discussions as to "whether Consolidated Rig would have potential liability" does not trigger Rule 26(b)(3)(A) protection—a blanket assertion of the company's assessment of liability does not mean that the memorandum was created for the primary purpose of litigation. *Highland Tank*, 246 F.R.D. 239 at 246. The Court therefore concludes that the memo, although likely made in reasonable anticipation of litigation, was not made for the primary purpose of litigation. Instead, its primary purpose appears to be identifying what happened to cause the accident to avoid future safety issues on other snubbing rig sites. Accordingly, the memo does not fall within the scope of Rule 26(b)(3)(A)'s protection.

III.     **CONCLUSION**

Based on its *in camera* review of Consolidated Rig's withheld field service reports, redacted emails, withheld emails, and withheld internal memo, the Court concludes that none of the withheld or redacted documents are entitled to the work product doctrine protection pursuant to Rule 26(b)(3). Consolidated Rig has not met its burden as the party invoking the work product protection, but also, following the Court's independent review of the documents, the Court concludes that these documents either were not made in reasonable anticipation of litigation or were not made with preparation for litigation surrounding Mr. Jones's death as the primary purpose. Accordingly, Consolidated Rig's Motion for a Protective Order is hereby **DENIED**.

 /s Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  October 28, 2020
cc:       All counsel of record via ECF